IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| STATE PARKWAY CONDOMINIUM | ) | No. |
| ASSOCIATION; LIEBERMAN MANAGEMENT | ) | |
| SERVICES, INC.; DONNA WEBER; MICHAEL J. | ) | |
| NOVAK, INDIVIDUALLY AND IN HIS | ) | |
| REPRESENTATIVE CAPACITY FOR HIS MINOR | ) | |
| CHILD T.N. AS PARENT AND NEXT FRIEND; | ) | |
| and CHRISTINA BUGELAS NOVAK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, Great American Insurance Company ("GAIC") by its attorneys, Michael J. Duffy and Ashley J. Conaghan of Wilson Elser Moskowitz Edelman & Dicker LLP, and for their Complaint for Declaratory Judgment against the Defendants State Parkway Condominium Association ("SPCA"); Lieberman Management Services, Inc. ("Lieberman"); Donna Weber ("Weber"); Michael J. Novak, individually and in his representative capacity as Parent and Next Friend of his minor child T.N., ("MJN"), and Christina Bueglas Novak ("CBN"), states as follows:

## STATEMENT OF THE CASE

1.     This action seeks a declaration, pursuant to 28 U.S.C. §2201, that GAIC owes no insurance coverage obligations to the SPCA, Lieberman and/or Weber (collectively referred to as "the Association Defendants") under a policy of insurance issued by GAIC under which SPCA

is an insured in connection with the two pending lawsuits styled as: (1) *Board of Directors of the State Parkway Condominium Association v. Michael Novak,* Case No. 08 CH 11941 (Chancery Division, Cir. Ct. of Cook Cty., IL)(referred to as the "Chancery Suit"); and (2) *Michael Novak, Christina Bugelas Novak; T.N. by her parent and next friend Michael Novak v. Board of Directors, the State Parkway Condominium Association, Donna Weber, Lieberman Management Services, Inc. and Levenfield Pearlstein, LLC,* Case No. 13 cv 8861 (U.S. N.D.Ill.)(referred to as the "Federal Lawsuit")(collectively referred to as the "*Novak* Claims").

## PARTIES

2.      GAIC is an insurance company formed under the laws of the State of Ohio with its principal place of business in Ohio. GAIC conducts business in Illinois and within the geographical boundaries of this District.

3.      SPCA is an Illinois non-for-profit corporation with its principal place of business in Illinois. The Association conducts business in Illinois and within the geographical boundaries of this District.

4.      Lieberman is an Illinois corporation with its principal place of business in Illinois. Lieberman conducts business in Illinois and within the geographical boundaries of this District.

5.      Weber is a citizen and resident of Illinois.

6.      MJN and his minor child T.N. is are citizens and residents of Illinois.  MJN, individually and as T.N.'s representative, is joined as a defendant solely as an interested party to be bound by the judgment herein.

7.      CBN is a citizen and resident of Illinois.  CBN is joined as a defendant solely as an interested party to be bound by the judgment herein

2

**JURISDICTION AND VENUE**

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 exclusive of costs and interest and the parties are citizens of different states.

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391 as the case concerns coverage under insurance policies issued to cover risks in this District for a suit pending in this District as well as a suit pending within the geographical boundaries of this District and the parties reside and/or conduct business in this District.

**BACKGROUND**

10.     MJN and CBN are husband and wife homeowners at the State Parkway Condominium building and upon information and belief, they currently live there with their daughter, T.N. (collectively referred to as "the Novak Family").

11.     In March 2008, SPCA, *via* the SPCA Board, filed a complaint against MJN in the Chancery Suit.

12.     On April 30, 2008, MJN filed his Answer and Affirmative Defenses in response to SPCA's complaint in the Chancery Suit. A copy of MJN's Answer and Affirmative Defenses is attached hereto as Exhibit A.

13.     On January 13, 2009, MJN filed his first counterclaim in the Chancery Suit (the "original *Novak* Counterclaim"). A copy of the original *Novak* Counterclaim is attached hereto as Exhibit B.

3

14.     On June 16, 2009, MJN filed his first amended counterclaim in the Chancery Suit (the "First Amended *Novak* Counterclaim"). A copy of the First Amended *Novak* Counterclaim is attached hereto as Exhibit C.

15.     On September 2, 2009, MJN filed a second amended counterclaim in the Chancery Suit ("the Second Amended *Novak* Counterclaim). A copy of the Second Amended *Novak* Counterclaim is attached hereto as Exhibit D.

16.     On November 8, 2010, Michael and Christina Novak filed a complaint with the IDHR alleging SPCA engaged in a course of discrimination against the Novaks in connection with their housing, including the failure to provide CART services as a reasonable accommodation and acknowledging their dog as a service dog (the "2010 IDHR Complaint").

17.     On December 12, 2013, MJN individually and in his representative capacity for T.N. as parent and next friend, and CBN filed their complaint in the Federal Lawsuit. A copy of the complaint in the Federal Lawsuit is attached hereto as Exhibit E.

18.     SPCA submitted an Application for Insurance dated April 28, 2009 to Distinguished Properties Group ("Distinguished"), an insurance program agent seeking excess coverage insurance from GAIC as a member of Distinguished's real estate risk purchasing group ("the GAIC Application"). A copy of SPCA's Application for the GAIC Policy is attached as Exhibit F.

19.     The Application required a minimum of $2 million underlying primary D&O insurance below any GAIC policy. (See, Ex F. p. 3).

4

20.     In the SPCA's GAIC Application, SPCA acknowledged that it complied with the requirements and represented that it had obtained a $2 million primary D&O policy with Travelers for the May 1, 2009 to May 1, 2010 policy period. (See, Ex. F. p. 3).

21.     Based on the GAIC Application, SPCA became a member of Distinguished's real estate risk purchasing group and was issued a Certificate of Coverage, Certificate No. 1324074, which provided $25 million of excess liability coverage for the period of May 1, 2009 to May 1, 2010 under the Master Policy issued to Distinguished. A copy of the Certificate of Coverage is attached as Exhibit G. A copy of the Master Policy is attached as Exhibit H.

22.     Subject to all of its terms, the GAIC Policy provides, in part, as follows:

II.     **LIMITS OF INSURANCE**

\*          \*          \*

G.     **Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

1.     the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

\*          \*          \*

III.     **DEFENSE**

A.     We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

5

1.     the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of 'claims' for any 'occurrence' to which this policy applies; or

\*      \*      \*

## IV.   Conditions

\*      \*      \*

### F.   Duties in the Event of an Occurrence, Claim or Suit

\*      \*      \*

2.     If a "claim" or "suit" against any "insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

\*      \*      \*

### J.   Other Insurance

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

\*      \*      \*

23.     The GAIC Policy contains the following Endorsements which provide, in part, as follows:

### DIRECTORS AND OFFICERS LIABILITY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of or related in any way, either directly or indirectly, to any "wrongful act" of any director or officer of any Insured in the discharge or performance of any duties as such a director or officer except to the extent that such insurance is provided by a policy listed in the Schedule or Underlying Insurance, and for no broader coverage than is provided by such policy.

As used in this endorsement, "wrongful act" means any actual or alleged error, misstatement, misleading statement, act or omission, neglect, breach of duty by any director or officer in the discharge of any duty as a director or officer, or any matter claimed against such a director or officer by reason of such director's or officer's being a director or officer of any "Insured."

This endorsement does not change any other provision of the policy.

\* \* \*

### BODILY INJURY AND PROPERTY DAMAGE FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any "bodily injury" or "property damage" except to the extent that such insurance is provided by a policy listed in the Schedule or Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

\* \* \*

### PERSONAL INJURY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

7

Any liability imposed by law, or assumed by any "insured" under an "insured contract," because of "personal injury" except to the extent that such insurance is provided by a policy listed in the Schedule or Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

\* \* \*

### ADVERTISING INJURY - FOLLOWING FORM

The following exclusion is added to Section IV - EXCLUSIONS:

Any liability imposed by law, or assumed by any "insured" under an "insured contract," because of "advertising injury" except to the extent that such insurance is provided by a policy listed in the Schedule or Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.

\* \* \*

### MAINTENANCE OF UNDERLYING INSURANCE AMENDMENT ENDORSEMENT

I.    MAINTENANCE OF UNDERLYING INSURANCE

The policy or policies referred to in the Umbrella Application Underlying Carrier Information section, or renewals or replacements thereof, which are not more restrictive in coverage, shall be maintained in full effect during this policy period, except for any reduction in the aggregate limits solely by payment of claims and/or claims expense.

If the underlying insurance is not maintained in full effect by 'you' or if any limits of liability of underlying insurance are:

1. less than as stated in the application schedule of underlying insurance;

2. unavailable to "you" due to bankruptcy or insolvency of any underlying insurer; or

3. if there is any material change in the coverage of any underlying insurance;

   then the insurance afforded by this policy shall apply in the same manner as if such underlying insurance and limits of liability had been in effect, available, so maintained and unchanged.

*   *   *

## NOTICE OF OCCURRENCE ENDORSEMENT

The "**Duties in The Event of an Occurrence, Claim or Suit**" condition is amended to include the following:

If an "occurrence", claim or "suit" does not reasonably appear to involve either this insurance or any "underlying insurance," but it later develops into an "occurrence" claim or "suit" to which this insurance applies, the failure to report it to us will not violate this condition, provided the "insured" gives us notice as soon as practicable once the "insured" becoming (*sic*) aware that this insurance may apply to such "occurrence", claim or "suit".

*   *   *

## RISK PURCHASING GROUP ENDORSEMENT

*   *   *

5. Except insofar as to a coverage available to the insured in the underlying insurance, and for the full limits of liability shown therein, this insurance does not apply to "personal injury" arising out of any claim or suit based upon or alleging discrimination against any non-employee.

   Discrimination includes but is not limited to discrimination on the basis of age, disability, ethnic origin, martial status, physical or mental hardship, race, religious affiliation, sex or sexual orientation.

9

*   *   *

24.     The underlying 2009-2010 Primary D&O Policy effective May 1, 2009 to May 1, 2010 is a Claims Made policy issued by Travelers Casualty & Surety Company of America ("Travelers") (referred to as the 2009-2010 Travelers Policy"). The 2009-2010 Travelers Policy was initially issued with a $1,000,000.00 limit of liability, inclusive of defense costs.

25.     Upon information and belief, on or about June 25, 2009, the 2009-2010 Travelers Policy limit was amended to $2,000,000.00, inclusive of defense costs, adding an Exclusion for Claims Brought by a Specific Person or Entity and Amended Pending and Prior Litigation Date for Increased Limit of Liability Endorsements.

26.     The Insuring Agreement in the 2009-2010 Travelers Policy, as modified by Endorsement, provides as follows:

> The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

27.     The 2009-2010 Travelers Policy contains the following relatedness provision:

> Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim.

28.     The 2009-2010 Travelers Policy contains the following exclusions:

> The insurer shall not be liable to make any payment for Loss in connection with any Claim made against any of the Insureds:

10

\*    \*    \*

1)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, provided, that this exclusion shall not apply to allegations of mental anguish or emotional distress if and only to the extent that such allegations are made as part of a Claim for Wrongful Employment Practices;

2)  based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Policy is a renewal or replacement;

\*    \*    \*

9)  for liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; provided however, this exclusion shall not apply to (a) the Insurer's duty to defend and to pay Defense Costs regarding such Claim; (b) the extent the Insured would have been liable in the absence of such contract or agreement; or (c) the extent the Claim is a Claim for Wrongful Employment Practices;

10) brought about or contributed to by any deliberately fraudulent or dishonest act or omission or any purposeful violation of any statute or regulation by such Insured; however, this exclusion shall not apply unless a judgment or other final adjudication adverse to such Insured establishes such a deliberately fraudulent or dishonest act or omission or purposeful violation;

\*    \*    \*

29. The 2009-2010 Travelers Policy contains the following conditions:

\*    \*    \*

11

K.     Other Insurance

Such insurance as is provided under this Policy shall apply only as excess over any other valid and collectible insurance. If determined that this Policy and another insurance policy shall apply as primary, the company shall not be liable under this Policy for a greater proportion of such Loss and claims expenses than the applicable Limit of Liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against the Loss.

\*     \*     \*

30.    The 2009-2010 Travelers Policy contains a Non-Profit Change Endorsement which provides, in part, as follows:

Non-Profit Change Endorsement

\*     \*     \*

6)     The Insurer shall not be liable to may any payments for Loss, other than Defense Costs, in connection with any Claim made against any of the Insureds which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an Insured's obligation to provide reasonable accommodations under, or otherwise comply with, the American with Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any related or similar law or regulation.

\*     \*     \*

31.    The 2009-2010 Travelers Policy contains an Amended Definition of Insured to Include Property Manager Endorsement which provides as follows:

In consideration of the payment of premium:

12

1. Section II. DEFINITIONS, sub-paragraph G. is amended to include:

   a. any independent management organization under a written contractual agreement solely with the "Insured Organization" (a "Property Manager") and

   b. any director, officer or employee of a Property Manager

   but only while performing property management services for the "Insured Organization" which are enumerated in such written contractual agreement.

   \* \* \*

3. If any "Claim" made against a Property Manager or any director, officer or employee thereof gives rise to coverage both under this Policy and under any other liability policy of similar insurance issued by the Insurer of any of its affiliates, the Insurer's maximum aggregate limit of liability under all such policies for all "Loss" including "Defense Costs," from such "Claim" shall not exceed $1,000,000.00 subject to the remaining Limits of Liability of such policies.

   Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

   This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on May 1, 2009, if indicated herein.

   \* \* \*

32. The 2009-2010 Travelers Policy was amended to include an Exclusion for Claims

Brought by a Specific Person or Entity Endorsement which provides as follows:

   In consideration of the payment of premium, it is hereby understood and agreed that the "Insurer" shall not be liable to make any payment for "Loss" in connection with any "Claim" that is made against any "Insured(s)" and that is brought, maintained or asserted by or on behalf of Michael Novak with regard to any

13

losses above the $1M limit up to the $2M limit effective 5/2/2009.. (*sic*)

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on May 1, 2009, if indicated herein.

*      *      *

33.    The 2009-2010 Travelers Policy contains the following definitions:

B.    Claim means:

1)    a written demand for monetary or non-monetary relief;

2)    a civil proceeding commenced by the service of a complaint or similar pleading;

3)    a criminal proceeding commenced by a return of an indictment; or

4)    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against an "Insured" for a "Wrongful Act," including an appeal thereform.

C.    Defense Costs means that part of Loss consisting of reasonable costs, charges and expenses (including but not limited to attorney fees) incurred solely in defending or investigating Claims, including appeals therefrom. Defense Costs does not include salaries, wages, overhead or benefit expenses of any "Insured" or the "Insurer."

*      *      *

J.    Loss means the total amount excess of the applicable Retention which any "Insured" becomes legally obligated to pay as the result of all "Claims" first made against any

14

"Insured" during the "Policy Period" for "Wrongful Acts" including, but not limited to, damages, judgments, settlements and "Defense Costs." "Loss" does not include (1) the multiple portion of any multiple damage award, (2) criminal or civil penalties imposed by law, (3) taxes, (4) any amount not indemnified by the "Insured Organization" for which the "Insured" is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed.

*   *   *

M.    Policy Inception Date means the date stated in Item 2(a) of the Declarations.

N.    Policy Termination Date means the date stated in Item 2(b) of the Declarations or the date of any cancellation or non-renewal of this Policy, whichever is earlier.

O.    Policy Period means the period between the Policy Inception Date and the Policy Termination Date.

*   *   *

Q.    Related Wrongful Acts means Wrongful Acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

*   *   *

S.    Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

*   *   *

34.    On the Application for the 2009-2010 Travelers Policy, SPCA listed "Novak" as a claim or loss as follows:

15

6. **Current Insurance Information:** Please indicate if you have the following insurance products:

| Policy | Limit | Deductible | Insurance Company | Policy Period | Premium |
|---|---|---|---|---|---|
| Directors & Officers Liability | 1MM | 1K | Travelers | 5/1/08-09 | |
| Crime Coverage | 500K | 1K | Hartford | 5/1/08-09 | |
| Umbrella/Excess | 25K | 10K | AIG | 5/1/08-09 | |
| Commercial GL | 1MM | 0 | Steadfast | 5/1/08-09 | |

7. **Applicant Claims/Loss Information:** *To the extent that any lawsuit or claim required to be disclosed in response to questions 7.a) through 7.g) below constitutes a "Claim" as defined by the Policy, such claim was made prior to the policy period requested hereunder and therefore would be excluded from the proposed coverage.*

a) Please provide details or attach loss run for all previous claims, losses, litigation, or proceedings, whether or not insured, occurring in the past five- (5) years that would fall within the scope of the following insurance products. If none, please indicate "none: *Under current policy*

| Type of Loss | Number of | Total Amount | Litigation Costs | Settlement Costs |
|---|---|---|---|---|
| Directors & Officers | ✓ Novak | | | |
| Employment Practices | | | | |

A copy of SPCA's Application for the 2009-2010 Travelers Policy is attached as Exhibit I.

35.     The Association Defendants did not tender the *Novak* Claims to SPCA's commercial general liability ("CGL") insurer(s) until it tendered the *Novak* Claims to one of its CGL insurers, Strathmore Insurance Company, a stock company of Greater NY Insurance Companies ("GNY"), in January or February 2017.

36.     GNY issued a CGL policy to SPCA effective annually from May 1, 2009 to May 1, 2012 which provides a defense outside the limits of liability. A copy of the GNY Declarations and applicable form is attached as Exhibit J. The GNY Policies contained the following terms:

**Section I – Coverages**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

    a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. [...]

*        *        *

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.     **Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. [...]

\*     \*     \*

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*     \*     \*

4.     **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.     **Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b.     **Excess Insurance**

(1)     This insurance is excess over:

(a)     Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i)     That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

17

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use or aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section 1 — Coverage A — Bodily Injury and Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

\*       \*       \*

## SECTION V – DEFINITIONS

\*       \*       \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*       \*       \*

18

14. "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

*     *     *

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person's or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

*     *     *

37. GNY disclaimed coverage for the Chancery Suit and Federal Lawsuit on or about March 6, 2017.

38. Upon information and belief, SPCA had CGL policies in effect for the following policy periods: 1) May 1, 2007 to May 1, 2008; (2) May 1, 2008 to May 1, 2009; (3) May 1, 2012 to May 1, 2013; and (4) May 1, 2013 to May 1, 2014 which subject to their terms also provide coverage for claims for damages because of "bodily injury," "property damage" and "personal and advertising injury." Upon information and belief, the CGL policy issued to SPCA in effect May 1, 2008 to May 1, 2009 was issued by Steadfast Insurance Company. Upon information and belief, SPCA or the other the Association Defendants have not tendered the *Novak* Claims to these other CGL insurer(s).

2284783v.1

39.     Upon information and belief, as of March 9, 2017, SPCA claims that the $1 million limit of the underlying D&O 2009-2010 Travelers Policy is purportedly near exhaustion by payment of defense costs with respect to the *Novak* Claims and the 2010 IDHR Complaint. SPCA seeks to have GAIC pay the costs of the Association Defendants' defense in the Chancery Suit and Federal Lawsuit upon exhaustion of the Travelers' $1 million D&O limit for its 2009-2010 policy.

40.     GAIC denies any obligation to provide the Association Defendants with a defense and/or indemnification in connection with the *Novak* Claims.

41.     An actual controversy exists between the parties concerning the parties' rights and obligations with respect to coverage for the claims in the *Novak* Claims under the insurance policies at issue, and pursuant to 28 U.S.C. §2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief that may be necessary.

### COUNT I
### No Coverage Because No Claim First Made Within GAIC's Policy Period

42.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

43.     The GAIC Policy subject to all of its terms, provides excess D&O liability coverage only for claims first made during its policy period, May 1, 2009 to May 1, 2010.

44.     The original *Novak* Counterclaim was filed on January 13, 2009 before the May 1, 2009 inception of GAIC's Policy.

45.     The claims in the amended *Novak* Counterclaims, the 2010 IDHR Complaint, and the Federal Lawsuit arise out of the same or related acts as the original *Novak* Counterclaim.

Thus, the amended *Novak* Counterclaims, the 2010 IDHR Complaint, and Federal Lawsuit are treated as a single "claim" first made on January 13, 2009 before the May 1, 2009 inception of the GAIC Policy.

46. Therefore, there is no coverage under the GAIC Policy for the *Novak* Claims and consequently, GAIC owes no duty to defend or indemnify the Association Defendants for the *Novak* Claims.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

    A.    A declaration finding that GAIC owes no duty to defend or indemnify the Association Defendants for the claims against them in the Chancery Suit and Federal Lawsuit; and

    B.    For all such just and equitable relief, including costs of this suit.

**COUNT II**
**Known Loss/Loss In Progress Doctrine Precludes Coverage for the *Novak* Claims**

47. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

48. The Association Defendants were aware of a loss or probable loss no later than January 13, 2009 when the original *Novak* Counterclaim was filed and before the inception of the GAIC policy on May 1, 2009.

49. The Known Loss/Loss in progress doctrine precludes coverage for the *Novak* Claims.

50. Therefore, GAIC has no duty to defend or indemnify the Association Defendants under the GAIC Policy for the *Novak* Claims.

21

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.  A declaration finding that GAIC owes no duty to defend or indemnify the Association Defendants for the claims against them in the Chancery Suit and Federal Lawsuit; and

B.  For all such just and equitable relief, including costs of this suit.

## COUNT III
### Known Loss Exclusion Precludes Coverage for the *Novak* Claims

51.  Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

52.  The policy precludes coverage for any claim "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Policy is a renewal or replacement."

53.  The Association Defendants were aware of the original *Novak* Counterclaim in January 2009 and reported this claim to Travelers on or about March 16, 2009 in SPCA's Application for the 2009-2010 Travelers Policy.

54.  Consequently, the *Novak* Claims fall within the Known Loss Exclusion.

55.  Therefore, GAIC has no duty to defend or indemnify the Association Defendants under the GAIC Policy for the *Novak* Claims.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.  A declaration finding that GAIC owes no duty to defend or indemnify the Association Defendants for the claims against them in the Chancery Suit and Federal Lawsuit; and

22

B.     For all such just and equitable relief, including costs of this suit.

## COUNT IV
### Underlying Insurance Not Exhausted - the Association Defendants Must Pay the $1 Million Gap between the Underlying D&O Insurance and the GAIC Policy

56.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

57.     The GAIC Policy is excess to the underlying policies, including the primary D&O policy.

58.     The Maintenance of Underlying Insurance Endorsement provides that if the underlying insurance is not maintained in full effect or if any limits of liability of underlying insurance are less than as stated in the application schedule of underlying insurance, then the GAIC Policy "shall apply in the same manner as if such underlying insurance and limits of liability had been in effect, available, so maintained and unchanged."

59.     The Application provided that the minimum required underlying primary D&O insurance limit was $2 million and SPCA represented that it had a $2 million primary D&O policy with Travelers for the May 1, 2009 to May 1, 2010 policy period.  (See, Ex F. p. 3).

60.     The Association Defendants seeks coverage from GAIC for the *Novak* Claims immediately after the $1 million primary D&O limit under the 2009-2010 Travelers Policy is exhausted.

61.     There is a $1 million gap between the actual limit of the 2009-2010 Travelers Policy and the $2 million primary D&O limit required under the GAIC Policy ("the $1 million gap").

23

62. The Association Defendants must pay the $1 million gap in defense costs and/or indemnity before the GAIC Policy need respond.

63. Therefore, subject to the terms of the policy, GAIC has no duty to defend or indemnify the Association Defendants under the GAIC Policy for the *Novak* Claims until the $2 million in primary D&O limits are paid, requiring the Association Defendants to pay the $1 million gap.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

    A.    A declaration finding the Association Defendants must pay the additional $1 million gap before GAIC need respond;

    B.    A declaration that subject to all of the policy terms, GAIC has no duty to defend or indemnify the Association Defendants for the claims against them in the Chancery Suit and Federal Lawsuit until $2 million in primary D&O limits are paid; and

    B.    For all such just and equitable relief, including costs of this suit.

### COUNT V
### Underlying Insurance Not Exhausted: Association Defendants Must Defend the *Novak* Claims Because Of the Failure to Maintain Underlying CGL Insurance

64. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

65. The GAIC Policy is excess to the underlying policies, including any primary D&O policy and/or primary CGL policy issued to SPCA.

66. Upon information and belief, SPCA failed to give timely notice of the *Novak* Claims to its CGL insurers.

24

67.     Upon information and belief, if timely notice was given, one or more of SPCA's CGL insurers would have defended the Association Defendants in the *Novak* Claims and the 2009-2010 Travelers D&O policy would not have had to respond to defend the Association Defendants as respects the *Novak* Claims as Travelers' D&O policy would have been excess to any of SPCA's CGL insurers.

68.     Upon information and belief, by failing to give its CGL insurers proper notice of the *Novak* Claims, any coverage under those CGL policies is forfeit.

69.     SPCA failed to maintain the CGL policies in full effect and accordingly, the Association Defendants must defend the *Novak* Claims before the GAIC Policy need respond.

70.     Therefore, GAIC has no duty to defend or pay defense costs for the Association Defendants under the GAIC Policy for the *Novak* Claims.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.      A declaration finding that the Association Defendants must defend the claims against them in the Chancery Suit and Federal Lawsuit;

B.      A declaration finding that subject to all of the policy terms, GAIC owes no duty to defend or to pay defense costs for the Association Defendants for the claims against them in the Chancery Suit and Federal Lawsuit; and

C.      For all such just and equitable relief, including costs of this suit.

### COUNT VI
### Underlying Limits Not Exhausted: Association Defendants Must Pay $1 million for the Prematurely Exhausted 2009-2010 Travelers Policy

71.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

72. The GAIC Policy is excess to the underlying policies, including the primary D&O policy and primary CGL policy issued to SPCA.

73. Upon information and belief, SPCA failed to give timely notice of the *Novak* Claims to its CGL insurers.

74. Upon information and belief, if timely notice was given, one or more of SPCA's CGL insurers would have defended the Association Defendants in the *Novak* Claims and the 2009-2010 Travelers D&O policy would not have had to defend the Association Defendants in the *Novak* Claims as Travelers' D&O policy would have been excess to any of SPCA's CGL insurers.

75. The $1 million limit of the 2009-2010 Travelers Policy would not have been exhausted by payment of defense costs if the Association Defendants would have given proper notice under the SPCA's CGL policies.

76. Consequently, the CGL policies were not maintained in full effect and the $1 million limit of the 2009-2010 Travelers Policy was prematurely exhausted by the payment of defense costs.

77. As the Travelers D&O Policy was improperly exhausted, the Association Defendants have breached the terms of the GAIC Policy.

78. Therefore, subject to the terms of the policy, GAIC has no duty to provide coverage to the Association Defendants until they pay the $1 million in indemnity for the $1 million of the 2009-2010 Travelers Policy limits that were prematurely exhausted by payment of defense costs.

26

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.      A declaration finding that the Association Defendants must pay the $1 million in the 2009-2010 Travelers Policy limits in indemnity;

B.      A declaration finding that subject to all of the policy terms, GAIC has no indemnity obligation until the Association Defendants pay the $1 million in the 2009-2010 Travelers Policy limits in indemnity that were prematurely exhausted by payment of defense costs until the total of $2 million in primary limits are paid; and

C.      For all such just and equitable relief, including costs of this suit.

## COUNT VII
### Breach of Notice Condition in GAIC's Policy

79.      Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

80.      The GAIC Policy requires notice as soon as practicable if a claim or suit is "reasonably likely to involve this policy."

81.      Notice was first given to GAIC of the *Novak* Claims on or about February 6, 2017 representing that Travelers $1 million limits were almost exhausted with $860,093.91 paid in defense costs as of the end of January 2017.

82.      Upon information and belief, the Association Defendants were aware that the *Novak* Claims may implicate the GAIC Policy long before February 2017.

83.      Upon information and belief, the Association Defendants breached the notice condition of the GAIC Policy and have forfeited whatever coverage night otherwise have been available for the *Novak* Claims.

27

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.      A declaration finding that GAIC owes no duty to defend or indemnify the Association Defendants for the claims against them in the Chancery Suit and Federal Lawsuit; and

B.      For all such just and equitable relief, including costs of this suit.

### COUNT VII
### Other Insurance

84.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

85.     The GAIC Policy is an excess policy. The Other Insurance provision provides that "[i]f other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy."

86.     To the extent that there is underlying or primary insurance, such as additional policies issued to SPCA and/or policies issued to Lieberman and/or Weber, the GAIC Policy is excess and said insurance must be exhausted before the GAIC Policy responds.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.      A declaration finding that GAIC owes no duty to defend or indemnify the Association Defendants for the claims against them in the Chancery Suit and Federal Lawsuit until all such underlying or primary insurance is exhausted; and

B.      For all such just and equitable relief, including costs of this suit.

28

87.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

88.     The GAIC Policy provides that "a 'loss' does not include (1) the multiple portion of any multiple damage award, (2) criminal or civil penalties imposed by law, (3) taxes, (4) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed."

89.     Moreover, provision 6 of the Non-Profit Change Endorsement provides that:

> The Insurer shall not be liable to may any payments for Loss, other than Defense Costs, in connection with any Claim made against any of the Insureds which constitute costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or equitable relief, including but not limited to actual or anticipated costs and expenses associated with or arising from an Insured's obligation to provide reasonable accommodations under, or otherwise comply with, the American with Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations thereunder, or any related or similar law or regulation.

90.     The *Novak* Claims seek injunctive relief, equitable relief, punitive damages, attorneys' fees and costs.

91.     These claims do not seek a covered "loss" under the policy terms or applicable public policy.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.  A declaration finding that GAIC owes no coverage to the Association Defendants for this relief in the Chancery Suit and Federal Lawsuit; and

B.  For all such just and equitable relief, including costs of this suit.

## COUNT X
### Breach of Contract Excludes Precludes Coverage

92.  Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

93.  The GAIC Policy precludes coverage for "liability under or breach of any oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; provided however, this exclusion shall not apply to (a) the Insurer's duty to defend and to pay Defense Costs regarding such Claim; (b) the extent the Insured would have been liable in the absence of such contract or agreement; or (c) the extent the Claim is a Claim for Wrongful Employment Practices."

94.  To the extent that the Association Defendants are liable under or for any breach of contract or agreement, the Breach of Contract Exclusion precludes coverage for such liability.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.  A declaration finding that GAIC owes no coverage for any liability under any contract or for breach of contract; and

B.  For all such just and equitable relief, including costs for this suit.

30

## COUNT XI
## Bodily Injury Exclusion Precludes Coverage

95.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

96.     The GAIC Policy precludes coverage "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving bodily injury, sickness, mental anguish, emotional distress, disease or death of any person, provided, that this exclusion shall not apply to allegations of mental anguish or emotional distress if any only to the extent that such allegations are made as part of a Claim for Wrongful Employment Practice."

97.     The Federal Lawsuit alleges that the Novaks suffered emotional distress, including allegations of physical manifestation of emotional distress, *i.e.*, migraines, stomach aches, nausea and difficulty sleeping.

98.     The claims in the Federal Lawsuit fall within the Bodily Injury Exclusion and therefore there is no duty to defend or indemnify the Association Defendants for the claims against them in the Federal Lawsuit.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

A.      A declaration finding that GAIC owes no duty to defend or indemnify the Association Defendants for the claims against them in the Federal Lawsuit; and

B.      For all such just and equitable relief, including costs for this suit.

31

## COUNT XII
### Fraudulent or Dishonest Acts Exclusion Precludes Coverage

99.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

100.    The Policy precludes coverage for any "deliberately fraudulent or dishonest act or omission or any purposeful violation of any statute or regulation by such Insured" provided there is a judgment or final adjudication adverse to the insured.

101.    To the extent that there is a judgment or final adjudication establishing a deliberate fraudulent or dishonest act or omission or purposeful violation, the Fraudulent or Dishonest Acts Exclusion precludes coverage.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

      A.     A declaration finding that GAIC owes no coverage for any deliberate fraudulent or dishonest act or omission or purposeful violation of a statute or regulation; and

      B.     For all such just and equitable relief, including costs for this suit.

## COUNT XIII
### Discrimination Exclusion Precludes Coverage

102.    Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

103.    The GAIC Policy precludes coverage arising out of a claim or suit based on the alleged discrimination, including disability discrimination, of a non-employee except insofar as to a coverage available to the insured in the underlying insurance.

32

104. To the extent the *Novak* Claims alleged discrimination, the Discrimination Exclusion in the GAIC Policy applies to preclude coverage.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

    A.    A declaration finding that GAIC owes no duty to defend or indemnify the Association Defendants for the discrimination claims against them in the Chancery Suit and Federal Lawsuit; and

    B.    For all such just and equitable relief, including costs for this suit.

### COUNT XIV
### No Coverage for Persons or Entities Who are Not Insureds

105. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 40 above as if fully set forth herein.

106. Subject to all of terms of the GAIC Policy, a Property Manager and a director, officer of an employee of a Property Manager is an insured "only while performing property management services for the 'Insured Organization' which are enumerated in such written contractual agreement."

107. To the extent that Weber and/or Lierberman were not performing property management services which are enumerated in a written contractual agreement with SPCA, they do not qualify as insureds under the GAIC Policy and there is no coverage under the GAIC Policy.

WHEREFORE, Plaintiff, GAIC, prays that this Court enter judgment in their favor:

    A.    A declaration finding that GAIC owes no coverage to Weber and/or Lieberman for the claims against them in the Chancery Suit and Federal Lawsuit if Weber and Lierberman acted outside of the enumerated

33

property management services in a written contractual agreement with SPCA; and

B.    For all such just and equitable relief, including costs for this suit.


Respectfully Submitted,


By:    _____/s/ Michael J. Duffy_____
One of the Attorneys for Great American Insurance Company

Michael J. Duffy (6196669) - michael.duffy@wilsonelser.com
Ashley J. Conaghan (6303052) - Ashley.conaghan@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street - Suite 3800
Chicago, IL 60603
(312) 704-0550
(312) 704-1522 (fax)

2284783v.1