UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE PARKWAY CONDOMINIUM )<br>ASSOCIATION, LIEBERMAN MANAGEMENT )<br>SERVICES, INC., DONNA WEBER, MICHAEL )<br>J. NOVAK, individually and in his representative )<br>capacity for his minor child T.N. as parent and next )<br>friend, and CHRISTINA BUGELAS NOVAK, )<br>DIANE SCHWARZ, P.A., )<br>)<br>Defendants, )<br>_____)  | Case No. 17-cv-3083<br><br><br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Defendant and third-party plaintiff, State Parkway Condominium Association ("SPCA") filed a third-party complaint against third-party defendant, counter-plaintiff, and fourth-party plaintiff Travelers Casualty and Surety Company of America ("Travelers"), American International Specialty Lines Insurance Company, Harleysville Lake States Insurance Company, Steadfast Insurance Company, and Strathmore Insurance Company [43]. SPCA now moves for partial judgment on the pleadings on count I of the third-party complaint against Travelers [128].[1] Travelers filed a cross-motion for judgment on the pleadings [161] on its counterclaim and fourth-party complaint against SPCA. For the reasons stated below, this Court grants Travelers' motion and denies SPCA's partial motion for judgment on the pleadings.

---

[1] Fourth-party defendants Lieberman Management Services, Inc. and Donna Weber have adopted the SPCA motion.

1

**Background**

The following facts taken from SPCA's third-party complaint are accepted as true for purposes of ruling on the motions now before the Court. SPCA is an Illinois not-for-profit corporation. It is the association of owners of the condominium building located at 1445 North State Parkway, Chicago, Illinois, and is responsible for the administration of the building pursuant to the Declaration of Condominium Ownership and of Easements, Restrictions, Covenants, and By-Laws for the State Parkway Condominium, dated November 5, 1992. Travelers is a Connecticut insurance company that provided directors' and officers' liability insurance to SPCA beginning May 30, 2006, renewed annually, through May 2012.

Michael Novak and Christine Bugelas Novak reside in the SPCA building with their minor child, T.N. In January 2007, Michael Novak filed a charge with the Illinois Department of Human Rights ("IDHR"), alleging that SPCA failed to accommodate his disability. Travelers defended the claim under SPCA's Non-Profit Management and Organization Liability Policy for the May 30, 2006, to May 30, 2007, period. The parties settled the matter in September 2007.

In March 2008, SPCA initiated an action in the Circuit Court of Cook County, Chancery Division against Michael Novak, who filed a counterclaim in 2009, which he amended twice to allege harassment and defamation spanning from September 2007 through 2008. Travelers defended SPCA on the counterclaim. In a letter dated February 13, 2009, Travelers states that coverage for the Novak counterclaim was under the 2006-2007 policy with a $1 million limit because the allegations in Novak's counterclaim and Novak's IDHR charge are "Related Wrongful Acts." In a letter dated October 22, 2009, Travelers stated that coverage of the Novak counterclaim was provided by the 2009-2010 policy, with a $2 million limit, reduced to $1 million by endorsement pertaining specifically to Novak.

In November 2010, Novak filed another charge with the IDHR against SPCA. Travelers undertook defense of the claims in that proceeding. Correspondence from Travelers dated December

2

6, 2010, states that coverage was under the 2009-2010 policy. That charge was the basis for Novak's federal law suit that he filed in December 2013 for which Travelers also provided a defense.

SPCA alleges that Travelers informed SPCA that coverage for the Novak claims is limited to $1 million and has been exhausted. SPCA further alleges that more than one Travelers' policy is implicated in the Novak claims and thus the coverage limit should be at least $2 million. SPCA asserts that the Novak proceedings comprise four separate claims and that Travelers' undertook the defense of each one. SPCA thus contends that Travelers had a duty to completely defend those claims and failing to do so constitutes a breach of the policies. SPCA further alleges that Travelers failed to advise SPCA of the actions it was taking, the cost of those actions, and the effect those actions would have on SPCA's available limits of insurance. SPCA seeks a declaration from this Court that Travelers violated the Illinois Insurance Code, 215 ILCS § 5/155, that the limits of the Travelers' policies are at least $2 million, that Travelers remains obligated to defend all the Novak claims, and that Travelers is estopped from asserting any defenses to coverage. SPCA further asks the Court to enter a judgment for the amount that SPCA has expended defending the Novak claims.

*The Travelers Policies:*

The Travelers policies each contain the following relevant provisions:[2]

The Insurer will pay on behalf of the **Insureds Loss** up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the **Insureds** as the result of any **Claim** first made against the **Insureds** and reported in writing to the Insurer during the **Policy Period** or the **Discovery Period**, if purchased, for a **Wrongful Act**.

The Travelers policies also contain a section setting forth "General Conditions and Limitations" that provides in relevant part:

**Losses** based upon or arising out of the same **Wrongful Act** or **Related Wrongful Acts** of one or more of the **Insureds** shall be considered a single **Loss** incurred as a result of a single **Claim**, which **Claim** shall be deemed to have been made on the date

---

[2] Travelers attached a copy of the policy to its Counterclaim (dkt. 126) and fourth-party complaint against SPCA. (Dkt. 54-1). The Court has retained the emphasis contained in the policies.

> the first **Claim** for such **Wrongful Act** or for one or more such **Related Wrongful Acts** is made against any of the **Insureds**, whether such date is before or after the **Policy Inception Date**. The applicable Retention shall apply only once to each such single **Claim**.

The Travelers policies define the relevant terms, bolded above, as follows:

> **Claim** means:
> 1) a written demand for monetary relief;
> 2) a civil proceeding commenced by service of a complaint or similar pleading; or
> 3) a criminal proceeding commenced by a return of an indictment; or
> 4) a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding
>
> against any **Insured** for a **Wrongful Act**, including an appeal therefrom.
>
> ***
>
> **Loss** means the total amount excess of the applicable Retention which any **Insured** becomes legally obligated to pay as the result of all **Claims** first made against any Insured during the **Policy Period** for **Wrongful Acts** including, but not limited to, damages, judgments, settlement and **Defense Costs**. **Loss** does not include (1) the multiple portion of any multiple damage award, (2) criminal or civil fines or penalties imposed by law, (3) taxes, (4) any amount not indemnified by the **Insured Organization** for which the **Insured** is absolved from payment by reason of any covenant, agreement or court order, and (5) matters uninsurable under the law pursuant to which this Policy is construed.
>
> ***
>
> **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the **Insured Organization** or by one or more **Insured Persons**, individually or collectively, in the respective capacities as such, including but not limited to any **Wrongful Employment Practices**.
>
> ***
>
> **Related Wrongful Acts** means **Wrongful Acts** that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

**Legal Standard**

Rule 12(c) permits a party to move for judgment on the pleadings, which consist of the "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed.R.Civ.P. 10(c)). A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss

4

for failure to state a claim pursuant to Rule 12(b)(6). *Hayes v. City of Chi.,* 670 F.3d 810, 813 (7th Cir. 2012).

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

**Discussion**

SPCA and Travelers cross-move for partial judgment on the pleadings in their favor. SPCA argues that this Court should find that the underlying Novak IDHR complaints and lawsuits are separate Claims under the Travelers' policies and that at least two of the policies cover those Claims. Travelers argues that the underlying Novak IDHR complaints and lawsuits are Related Wrongful Acts arising from Novak's initial IDHR complaint filed in January 2007 and, thus, are treated as a single Claim under the 2006-2007 policy with a coverage limit of $1 million.

Insurance policies are contracts and therefore courts apply the same rules of interpretation that govern the interpretation of contracts. *Continental Cas. Co. v. Howard Hoffman and Associates*, 2011 IL App (1st) 100957, ¶29 (2011).

> [W]hen construing the language of an insurance policy, the court's primary objective is to determine and effectuate the parties' intentions as expressed in their written agreement. If the terms in the policy are 'clear and unambiguous,' they must be given their plain and ordinary meaning. If the terms are ambiguous, meaning that they are

> susceptible to more than one reasonable interpretation, they will be construed strictly against the insurer. The court will interpret the policy as a whole, considering the type of insurance purchased, the nature of the risks involved, and the purpose of the contract. Limiting provisions in the policy are construed liberally in favor of the insured and against the insurer.

*Erie Insurance Exchange v. Triana*, 398 Ill.App.3d 365, 368 (1st Dist. 2010) (citing *Pekin Insurance Co. v. Estate of Goben,* 303 Ill.App.3d 639, 642 (5th Dist. 1999)). To determine whether an ambiguity exists between terms of an insurance policy, the court must ask "whether the provision is subject to more than one reasonable interpretation, not whether other possibilities can be suggested." *Triana*, 398 Ill.App.3d at 368.

SPCA argues that the term "Wrongful Related Act" is ambiguous even though it is defined in the policy. SPCA relies on *Doe v. Illinois State Medical Inter-Insurance Exchange*, 234 Ill.App.3d 129, 136 (1st Dist. 1992), in which the Illinois Appellate Court stated that term "related" has "no generally accepted meaning." SPCA concedes that "related" was not defined in the policy at issue in *Doe*, but nevertheless SPCA maintains that the term is ambiguous in this case because the definition here contains the word "relate." This Court is not persuaded.

Here, the policy defines "related wrongful acts" as "wrongful acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations." Courts in this district that have addressed similar language have found no ambiguity. In *Cushman & Wakefield, Inc. v. Illinois National Insurance Company*, the court considered the ambiguity of a policy provision stating that "*any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim or circumstances of which such notice has been given*, shall be considered made at the same time such Claim or circumstance has been given to the Insurer." No. 14 C 8725, 2018 WL 1898339, at *15 (N.D. Ill. Apr. 20, 2018) (Lefkow, J.) (emphasis in original). The district court found on summary judgment that the terms "related" and "interrelated" were not ambiguous simply because they were not separately defined in the policy. *Id.* at *16. The court reasoned that the terms were unambiguous because neither party presented differing

6

interpretations of those terms and nothing in the policies suggests that the terms should be given special meaning. Although the district court in *Cushman & Wakefield* was applying New York law to interpret the policy language, it employed the same tools of interpretation found under Illinois law. *See Triana*, 398 Ill.App.3d at 368 ("whether the provision is subject to more than one reasonable interpretation, not whether other possibilities can be suggested.").

In *Federal Ins. Co. v. Illinois Funeral Director's Ass'n*, No. 09 C 1634, 2010 WL 5099979, at *7 (N.D. Ill. Dec. 8, 2010) (Der-Yeghiayan, J.), the district court considered a policy provision defining "related claims" as "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." In that case, the district court evidently found no ambiguity with the language since the court readily applied the ordinary meaning of the language to find the underlying issues were related claims. *Id.* This Court therefore finds that the policy language defining "Related Wrongful Acts" that is central to the issue before the Court is unambiguous.

When reviewing the various underlying matters for relatedness the Court must consider whether each of the underlying wrongful acts "arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations." There are three underlying matters: Novak's 2007 IDHR complaint; Novak's 2009 Amended Counterclaim in the Chancery suit; and Novak's 2010 IDHR complaint and subsequent federal lawsuit, which SPCA concedes are the same matter.

Reviewing the underlying complaints and allegations, it is clear to this Court that they "arise out of, are based on, relate to or are in consequence of the same facts, circumstances or situations" under the plain and ordinary meaning of that definition. That definition is very broad and certainly encompasses the Novak matters. In Novak's initial IDHR complaint against SPCA, he alleged that SPCA failed to accommodate his hearing disability and discriminated against him based on this

7

disability by denying his request to use a Communication Access Real-Time Translation ("CART") service at condominium board meetings. The 2007 IDHR complaint was resolved between the parties with an agreement in principle that Novak could use a service dog among other accommodations. Novak's Amended Counterclaim alleged discrimination, retaliation, and harassment in connection with Novak's hearing disability, use of his service dog, and request for CART services. The counterclaim further alleges a breach of the settlement agreement from the 2007 IDHR complaint. Novak's 2010 IDHR complaint again alleges that SPCA failed to reasonably accommodate his hearing disability. The 2010 complaint refers to the 2007 IDHR complaint as a basis for SPCA's knowledge of Novak's disability and the source of SPCA's retaliation against Novak. It further alleges that SPCA "has continued to refuse to acknowledge" Novak's dog as a service animal. Novak filed the federal lawsuit based on the 2010 IDHR complaint. There is no question for this Court that these matters are related within the meaning of the policy. Each arises from or is based on or relates to SPCA's allegedly discriminatory and retaliatory conduct against Novak for his hearing disability. Any distinctions between these matters a superficial. *See Twin City Fire Ins. Co. v. Permatron Corp.*, No. 15 C 10252, 2018 WL 1565599, at *6 (N.D. Ill. Mar. 30, 2018) (Alonso, J.) (finding that claims for discrimination and retaliation were interrelated claims under similarly broad policy language). This Court finds that the underlying IDHR complaints and lawsuits here are related wrongful acts under the policy definition and therefore are a single Claim first made in January 2007.

      Plaintiff Great American Insurance Company filed its own response in opposition to SPCA's motion for partial judgment on the pleadings, arguing that if this Court grants Travelers' motion, then the coverage dispute between SPCA and Great American Insurance Company would also be resolved. The Court declines to decide whether resolution of the cross-motions for partial judgment on the pleadings between SPCA and Travelers also resolves the dispute between SPCA and one of its excess

8

insurance carriers, Great American, because that is a separate policy between different parties that is not before this Court on the present motions.

**Conclusion**

Based on the foregoing discussion, this Court grants Travelers' motion for judgment on the pleadings [161] and denies SPCA's amended motion for partial judgment on the pleadings [128].

IT IS SO ORDERED.

Date: 9/11/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge